UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14-CV-1077 (CEJ) |
| | ) | |
| 131,675 RENTABLE SQUARE FEET OF SPACE (114,500 ANSI BOMA OFFICES AREA (ABOA) USABLE SQUARE FEET OF SPACE, MORE OR LESS, TOGETHER WITH SUCH APPURTENANT PARKING AS IDENTIFIED IN THE EXISTING LEASE (TO-WIT: THIRTY-FIVE (35) COVERED PARKING SPACES AND ELEVEN (11) SURFACE PARKING SPACES), ALL LOCATED GENERALLY AT 400 SOUTH 18TH STREET, ST. LOUIS, MISSOURI, | ) | |
| and | ) | |
| GSA-VA ST. LOUIS PROPERTY, LLC, | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's motion to compel plaintiff to respond to certain interrogatories and requests for production. See Fed. R. Civ. P. 37(a)(3)(B). Plaintiff has responded in opposition, and the issues are fully briefed.

**I.   Background**

On June 10, 2014, after the expiration of a long-term lease, plaintiff the United States filed a declaration of taking for the Veterans Benefits Administration to occupy the subject building in downtown St. Louis consisting of 131,675 rentable square feet of office space together with parking spaces. Defendant GSA-VA St. Louis Property, LLC is the lessor of the property. Plaintiff condemned a possessory

interest in the property for a fixed term of 33 months, commencing on June 11, 2014 and ending on March 10, 2017, with no option for further occupation. As an estimate of just compensation for the estate taken, plaintiff deposited $4,701,185.27 into the Court's registry on June 11, 2014. Prior to the expiration of the condemned leasehold in March 2017, the federal occupants of the subject building plan to move to the federally-owned Charles F. Prevedel Building in Overland, Missouri when renovations on that building are complete.

In response to the complaint in condemnation, defendant did not challenge the taking, but demanded a jury trial on the issue of just compensation. See Fed. R. Civ. P. 71.1(e). On February 6, 2015, defendant served plaintiff with its first set of interrogatories and first requests for production of documents, seeking information related to the status of the renovations on the Prevedel Building. Plaintiff served its responses on March 25, 2015, objecting to certain requests on grounds of relevance. In the instant motion to compel, defendant argues that discovery related to the Prevedel Building is relevant to the issue of a rental premium for the uncertainty regarding the end of the condemnation period.

## II. **Legal Standard**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "A district court is afforded wide discretion in its handling of discovery matters." Cook v. Kartridg Pak Co., 840 F.2d 602, 604 (8th Cir. 1988).

Because the rules of discovery are broad, the burden is typically on the party resisting discovery to explain why discovery should be limited. Jo Ann Howard & Assocs., P.C. v. Cassity, 303 F.R.D. 539, 542 (E.D. Mo. 2014). That is, after the proponent of discovery makes a threshold showing of relevance, the party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper. Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993); St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 511-12 (N.D. Iowa 2000). The party resisting discovery "must demonstrate to the court 'that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" St. Paul Reinsurance Co., Ltd., 198 F.R.D. at 511-12 (quoting Burke v. New York City Police Dep't, 115 F.R.D. 220, 224 (S.D.N.Y. 1987)).

### III. Discussion

#### A. Discovery Requests and Responses

The contested requests and responses are set forth below. Each of defendant's requests pertains to information or documents related to the Prevedel Building.

#### 1. Interrogatories

4. State with specificity the date you expect to be able to vacate the Subject Property and identify all documents: (i) related to the selection of 33 months as the duration of the taking; (ii) the anticipated scope of work involved in the design and/or construction of the renovations of the Prevedel Federal Building for occupancy by the VA; and (iii) the schedule for the work involved

in the design and/or construction of the renovations of the Prevedel Federal Building.

5. Identify any individual who has knowledge regarding: (i) the selection of 33 months as the duration of the taking; (ii) the anticipated scope of work involved in the design and/or construction of the renovations of the Prevedel Federal Building for occupancy by the VA; and (iii) the schedule for the work involved in the design and/or construction of the renovations of the Prevedel Federal Building.

## 2. Document Requests

1. All documents describing, referring or relating to the anticipated scope of work involved in the design and/or construction of the renovations of the Prevedel Federal Building for occupancy by the VA, including, without limitation, any preliminary designs or detailed cost calculations that were the basis for the $27.16 million estimated cost presented to Congress for funding approval.

2. All documents containing, referring or relating to a schedule for the work involved in the design and/or construction of the renovations of the Prevedel Federal Building for occupancy by the VA.

3. All documents referring or relating to the solicitation of bids for the design and/or construction of the renovations of the Prevedel Federal Building for occupancy by the VA.

## 3. Plaintiff's Responses

Plaintiff made the same objection to each above-listed discovery request:

Plaintiff objects to this [request] because such information is not relevant to a determination of fair market value of the subject property on the date of taking, nor is it likely to lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b)(1). The only issue for the fact-finder in this case is the amount of just compensation owed for the subject property on the date of taking. See United States v. Reynolds, 397 U.S. 14, 20 (1970); Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 9-10 (1984). Where the estate taken is a leasehold, the measure of just compensation is the market rent of the occupied premises for the term specified. Kimball Laundry Co. v. United States, 338 U.S. 1, 7 (1949). The United States' own need for property particularly suited for its public purpose cannot be considered as a measure of value. United States v. Miller, 317 U.S. 369, 375 (1943) (eliminating consideration of value related to "a taker who needs the land because of its particular fitness for the taker's purpose"). Information regarding the Prevedel Federal Building, miles

away from the subject property, has absolutely no bearing on the amount of just compensation owed for the subject property on the date of taking. Such information would be both inadmissible at trial and completely irrelevant to the issues to be tried in this action.

### B. The Parties' Arguments

Defendant asserts that discovery related to the Prevedel Building is relevant to a rental premium for the uncertainty regarding the end of the condemnation period, which its valuation expert included in his appraisal of the fair market value of the possessory interest. Defendant argues that a fair market value determination must take into account all considerations that might reasonably be given substantial weight in a hypothetical bargaining between a willing buyer and willing seller. In the case of a temporary taking, defendant contends that an owner is entitled to be compensated for the uncertainty of the duration of the government's occupation. Accordingly, defendant concludes, the discovery of facts related to the status of funding for the Prevedel Building project, the government's plans for the renovation and the government's ability to vacate the subject building as of the date of condemnation is relevant to the uncertainty that would be reflected in the market rental rate.

In opposition, plaintiff contends that where an estate taken is a defined-term, temporary leasehold, the measure of just compensation is the market rent for the occupied premises for the term specified. Consequential losses, such as injury to business, lost profits, and frustration of plans, must be excluded from this computation. Plaintiff asserts that no federal case has ever held that a landowner is entitled to a premium because the government could condemn again at the end of the defined condemned leasehold period. In the absence of market data or a showing of special costs or economic harm directly affecting market value, which

5

plaintiff argues defendant has not produced, a claim for a premium would improperly penalize the government for condemning. Finally, in contrast to defendant's contentions regarding uncertainty relating to the Prevedel Building project, plaintiff provides as exhibits publicly available documentation demonstrating that Congress approved funding for the Prevedel Building in advance of the taking.

### C. Just Compensation

The United States has the authority to take private property for public use under the right of eminent domain. Kohl v. United States, 91 U.S. 367, 371 (1875). However, the Takings Clause requires the government to provide "just compensation" to the owner of the property for a taking. U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."). The Supreme Court "has repeatedly held that just compensation normally is to be measured by 'the market value of the property at the time of the taking.'" United States v. 50 Acres of Land, 469 U.S. 24, 29 (1984) (quoting Olson v. United States, 292 U.S. 246, 255 (1934)). "Under this standard, the owner is entitled to receive 'what a willing buyer would pay in cash to a willing seller' at the time of the taking." United States v. 564.54 Acres of Land, 441 U.S. 506, 511 (1979) (quoting United States v. Miller, 317 U.S. 369, 374 (1943)). Compensation is required when a leasehold is taken and the government occupies the property for its own purposes, even if the taking is temporary. Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 322 (2002) (citing United States v. General Motors Corp., 323 U.S. 373 (1945) and United States v. Petty Motor Co., 327 U.S. 372 (1946)). In a temporary taking of a leasehold, "the proper measure of

6

compensation is the rental that probably could have been obtained." Kimball Laundry Co. v. United States, 338 U.S. 1, 7 (1949) (rejecting the calculation of the difference between the market value on the date of the taking and on the date of return as a method to measure just compensation for a temporary taking).

The market value of property for purposes of determining just compensation "does not include the special value of property to the owner arising from its adaptability to [the owner's] particular use." 564.54 Acres of Land, 441 U.S. at 511 (quoting Miller, 317 U.S. at 374-75). Because market value "does not fluctuate with the needs of condemnor or condemnee but with general demand for the property, evidence of loss of profits, damage to good will, the expense of relocation and other such consequential losses are refused in federal condemnation proceedings." Petty Motor Co., 327 U.S. at 377-78. Thus, because just compensation "is for the property, and not to the owner," Monongahela Navigation Co. v. United States, 148 U.S. 312, 326 (1893), "indirect costs to the property owner caused by the taking of his land are generally not part of the just compensation to which he is constitutionally entitled." United States v. Bodcaw Co., 440 U.S. 202, 203 (1979); see Olson, 292 U.S. at 255 (stating that the private owner "must be made whole but is not entitled to more").

The seminal Supreme Court case to consider the calculation of just compensation based on market value for a temporary taking under a leasehold was United States v. General Motors Corporation, 323 U.S. 373 (1945). In General Motors, the Supreme Court held that when a taking is only temporary or partial, other factors that "certainly and directly affect the market price agreed upon" beyond the long-term rental value of the space may be considered as evidence of

market value. Id. at 382-83. Such factors, in General Motors, included the costs of labor, materials, transportation and storage for the leasor to move out of the property. The Court was clear in stating that these removal costs were not to be considered "as an independent item of damage, but as bearing on the rental value such premises would have on a voluntary sublease by a long-term tenant to a temporary occupier." United States v. Westinghouse Elec. & Mfg. Co., 339 U.S. 261, 263-64 (1950) (clarifying General Motors). In holding thus, "the Court was scrupulously careful not to depart from the settled rule against allowance for 'consequential losses' in federal condemnation proceedings." Id. at 264. The Court in General Motors described this settled rule as follows:

> The rule in such a case is that compensation for that interest does not include future loss of profits, the expense of moving removable fixtures and personal property from the premises, the loss of good-will which inheres in the location of the land, or other like consequential losses which would ensue the sale of the property to someone other than the sovereign. No doubt all these elements would be considered by an owner in determining whether, and at what price, to sell. No doubt, therefore, if the owner is to be made whole for the loss consequent on the sovereign's seizure of his property, these elements should properly be considered. But the courts have generally held that they are not to be reckoned as part of the compensation for the fee taken by the Government. We are not to be taken as departing from the rule they have laid down, which we think sound.

Id. at 379-80. Thus, in a temporary taking of a leasehold, as in a complete condemnation, consequential losses "must be excluded from the reckoning." Id. at 383; see also United States v. 38.60 Acres of Land, 625 F.2d 196, 200 (8th Cir. 1980) ("While the rule may appear unjust, it is well settled that the landowner is not entitled, at least within the framework of a condemnation suit, to be compensated for such consequential damages as loss of business, relocation

8

expenses, and the like.") (quoting United States v. 91.90 Acres of Land, 586 F.2d 79, 87 (8th Cir. 1978)).

Similarly, in Olson v. United States, a case defendant cites, the Supreme Court stated that in making a determination of just compensation for a condemnation, "there should be taken into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining." 292 U.S. at 257. However, the Court also went on to state:

> Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of truth.

Id. As such, only direct evidence of market rental value, to the exclusion of remote, hypothetical conjecture, should be considered in ascertaining just compensation for a taking.

Defendant contends that the uncertainty premium it seeks does not constitute consequential damages, but instead is a measure of the rental market's reaction as of the date of taking to the perceived risk of consequential damages for lost opportunities to rent, sell, or develop the property. In other words, the premium sought is based on the effect on the market rental rate of the property for the risk of a future taking. Defendant also argues that the uncertainty premium it seeks is analogous to the additional rent that a landlord in a private commercial setting would demand and be able to obtain from a tenant who sought a short-term lease of an office building in which the landlord waived its contractual and statutory rights to a holdover penalty or to evict the tenant for holding over. Because the

government has the power to condemn an additional period at the end of 33 months if the Prevedel Building is not ready, defendant asserts that the risk underlying the uncertainty premium is the risk that a suitable long-term tenant will come along during the extended period of taking.

The declaration of taking plaintiff filed contains no option to renew, holdover, or terminate early. The government's condemnation power, however, gives plaintiff the opportunity to take the subject property for a public purpose again after 33 months have elapsed, if it decides it needs to. At that time, plaintiff would be required to file another declaration of taking and provide an estimation of just compensation for the taking, as it did with the present taking. This hypothetical future taking of private property for public use, however, is inherent and possible at all times by the very nature of the government's power of eminent domain. See United States v. Jones, 109 U.S. 513, 518 (1883) ("The power to take private property for public uses, generally termed the right of eminent domain, belongs to every independent government. It is an incident of sovereignty, and . . . requires no constitutional recognition.").

Essentially, defendant seeks a premium solely on the basis of plaintiff's status as a government entity. An "uncertainty premium" premised on the fact that the government is the tenant and could condemn for another period of time is not permitted in the determination of just compensation for the present taking. See General Motors, 323 U.S. at 379-80 (stating that "consequential losses which would ensue the sale of the property to someone other than the sovereign" are "not to be reckoned as part of the compensation for the fee taken by the Government"); see also United States v. 3,218.9 Acres of Land, 619 F.2d 288, 291 (3d Cir. 1980) ("[A]

10

possible future taking of property does not give rise to a present cause of action for damages."). The market value of the property taken should be assessed uninfluenced by plaintiff's right to exercise its power of eminent domain in the future. Cf. United States ex rel. Tenn. Valley Auth. v. Powelson, 319 U.S. 266, 276 (1943) ("If the owner's claim against the sovereign were increased by reason of the power of eminent domain, then the very existence of the right of condemnation would confer on the owner a value for which he must be paid when the right is exercised."). In the event of a future taking, defendant may be assured that the law would require plaintiff to provide just compensation again. U.S. Const. amend V; 40 U.S.C. § 3114.

In a case defendant relies upon where the government's temporally and spatially partial taking frustrated the building owner's plans to renovate and rendered it difficult or impossible to rent the remainder of the building, the court found that settled legal principles precluded the owner's claim for added compensation for the frustration of its renovation and rental plans. United States v. 1735 N. Lynn St., 676 F. Supp. 693, 701 (E.D. Va. 1987). Citing Justice Douglas, the court noted:

> It is a well settled rule that while it is the owner's loss, not the taker's gain which is the measure for compensation for the property taken, not all losses suffered by the owner are compensable under the Fifth Amendment . . . . [T]he sovereign must pay only for what it takes, not for the opportunities the owner may lose.

Id. (quoting Powelson, 319 U.S. at 281-82). Here, plaintiff's taking of the subject building may frustrate defendant's plans or ability to lease the building to a more desirable future long-term tenant. This flexibility may be a thing of value and the frustration of these plans may mean a loss to defendant. However, the law is clear

11

that plaintiff must pay only for what it takes, not for opportunities defendant loses. Powelson, 319 U.S. at 282.

In another case defendant relies upon, the owners of a building contended that a determination of the market rental value for the space temporarily taken by the government "must include consideration of all the costs that a would-be tenant would have to pay to obtain a voluntary lease for space in an otherwise empty building ready for conversion, with contractors ready to work." United States v. 38,994 Net Usable Square Feet, No. 87-C-8569, 1989 WL 51395, at *2 (N.D. Ill. May 11, 1989). The court agreed with the owners and found that, pursuant to the Supreme Court's decisions in General Motors and Kimball, evidence of the owners' actual losses[1] for the period of the taking could be offered as evidence relevant to determining just compensation. United States v. 38,994 Net Usable Square Feet, No. 87-C-8569, 1989 WL 152806, at *1 (N.D. Ill. Nov. 21, 1989) (clarifying the court's May 10, 1989 order). However, the court also clearly recognized the settled principle that the government is not required to pay for consequential losses as distinct items of damages. Id. The "uncertainty" the court referred to in its jury instruction pertained to the unknown length of future occupation at the time the government held over on the prior lease but before it filed a complaint in condemnation. This uncertainty was in existence for a period of time prior to the taking, not subsequent to the defined leasehold period condemned. Thus, the court's decision in 38,994 Net Usable Square Feet does not compel an alternative outcome here where defendant seeks an "uncertainty premium" for the possibility

---

[1] The factors the court stated a jury could consider included "the loss of the right to convert the property during the term of the taking, the increased construction and financing cost resulting from waiting six months to convert, and the anticipated costs of carrying and operating the entire property due to the [g]overnment's presence." 38,994 Net Usable Square Feet, 1989 WL 51395, at *3.

12

of future consequential damages for lost business opportunities or the possibility of a future taking after a fixed leasehold ends.

Because the uncertainty premium sought does not constitute a legally permissible component of market rental value, the Court finds that defendant has failed to demonstrate the relevance of the discovery it seeks related to the Prevedel Building for the purpose of determining just compensation for the taking at issue. As such, plaintiff's objections are sustained.

* * * * *

For the reasons set forth above,

**IT IS HEREBY ORDERED** that defendant's motion to compel [Doc. #53] is **denied.**

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 20th day of July, 2015.